UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Munce's Superior Petroleum
Products, Inc. et al.

    v.                              Civil No. 12-cv-262-JL
                                    Opinion No. 2013 DNH 042

NH Department of Environmental
Services

**OPINION AND ORDER**

This appeal from an order of the Bankruptcy Court in a Chapter 11 proceeding presents a narrow issue of the priority of postpetition fines assessed against a debtor-in-possession. Debtors-in-possession Harold P. Munce and Munce's Superior Petroleum Products, Inc. (collectively, "appellants"[1]) argue that the Bankruptcy Court erred in concluding that nearly $200,000 in fines assessed against them for contempt in a state-court environmental action qualified as "the actual, necessary costs and expenses of preserving the estate," 11 U.S.C. § 503(b)(1)(A), such that those fines are entitled to administrative priority.

---

[1] Appellants' underlying bankruptcy cases are being jointly administered with the Chapter 11 bankruptcy cases of five other affiliated debtors: Gorham Oil, Inc.; Superior Trucking, Inc.; Munce's Real Estate Ventures, LLC; BMRA Real Estate Ventures, LLC; and Marilyn Munce. Those other debtors, though nominally appellants, are not involved in this appeal and play only minor roles in the relevant events. For clarity's sake, the court has omitted mention of them from the remainder of this order.

The New Hampshire Department of Environmental Services, plaintiff in the state-court action, argues that the priority of such claims is well-established in this Circuit.

This court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the Bankruptcy Court under 28 U.S.C. § 158(a)(1).  See also L.R. 77.4.  After hearing oral argument, the court affirms the decision of the Bankruptcy Court. The appellants have not meaningfully distinguished this case from In re Charlesbank Laundry, 755 F.2d 200 (1st Cir. 1985), or Cumberland Farms, Inc. v. Florida Department of Environmental Protection, 116 F.3d 16 (1st Cir. 1997), the controlling cases on this issue.  Together, those cases establish that fines qualify as administrative expenses where they are assessed for (1) postpetition violations of state law and a prepetition injunction–-the precise posture in which the fines at issue in this case arose; and (2) the debtor-in-possession's failure to comply with environmental laws postpetition–-the precise nature of the fines here.

## I. **Applicable legal standard**

When hearing an appeal from the Bankruptcy Court, this court applies the same standards of review governing appeals of civil cases to the appellate courts.  Cf. In re Watman, 301 F.3d 3, 7

(1st Cir. 2002). As such, findings of fact by the Bankruptcy Court will not be set aside unless they are clearly erroneous. Id.; see also Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997); Fed. R. Bankr. P. 8013. "A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is left with the definite and firm conviction that a mistake has been committed." Palmacci, 121 F.3d at 785 (quotations omitted). The Bankruptcy Court's legal conclusions are reviewed de novo. Id.; In re Gonic Realty Trust, 909 F.2d 624, 626 (1st Cir. 1990). "Discretionary rulings made pursuant to the Bankruptcy Code, such as whether to convene an evidentiary hearing, are reviewable only for an abuse of discretion." Gonic Realty Trust, 909 F.2d at 626. "A bankruptcy court may abuse its discretion by ignoring a material factor that deserves significant weight, relying on an improper factor, or, even if it considered only the proper mix of factors, by making a serious mistake in judgment." In re Salem Suede, Inc., 268 F.3d 42, 44 (1st Cir. 2001) (quotations and brackets omitted).

## II.  **Background**

Prior to filing its Chapter 11 petition, Munce's Superior Petroleum Products ("MSPP") was engaged in a number of business

3

activities, primarily involving fuel distribution and the ownership and operation of convenience stores.  In connection with those ventures, MSPP stored fuel in above-ground tanks at a commercial bulk storage facility ("Facility 1"); conducted its fuel distribution business from a nearby location ("Facility 2"); and operated a nearby convenience store ("Facility 3") as well. Munce owns or owned all three facilities.

In July 2010, the New Hampshire Department of Environmental Services, or "DES," sued MSPP and Munce in Coös County Superior Court, alleging they had violated New Hampshire's groundwater protection laws "by causing or suffering the discharge of oil at their facilities and failing to construct and maintain required spill protection at their facilities."  See N.H. Rev. Stat. Ann. §§ 146-A, 485, 485-C.  The following month, the Superior Court entered an agreed-upon preliminary injunction that required appellants to bring the above-ground fuel storage tanks at all three facilities into compliance with those laws (by, for example, providing secondary containment for the tanks, see generally N.H. Code. R. Env-Wm 1402.01 et seq., and submitting a plan to avoid stormwater contamination) within 30 days or, alternatively, to take those tanks out of service.  Appellants failed to comply with the injunction, prompting DES to move the court to find them in contempt.

In March 2011, after the Superior Court had held a hearing on DES's contempt motion, but before it acted on the motion, MSPP filed a petition in the Bankruptcy Court seeking relief under Chapter 11 of the Bankruptcy Code.  That filing was followed two months later by Munce's own petition for relief under Chapter 11, which shortly thereafter came to be jointly administered with MSPP's Chapter 11 case.

In late June 2011, on DES's motion, the Bankruptcy Court ordered that the automatic stay did not apply to DES's state-court action against MSPP and Munce because it was "brought for the purpose of protecting public health and safety, and the environment, and to effectuate public policy."  See 11 U.S.C. § 362(b)(4).  The parties thus returned to Superior Court seeking a resolution of DES's contempt motion.  On September 19, 2011, the Superior Court issued an order finding MSPP and Munce[2] in contempt and ordering them to "take[] all of [their] tanks at Facilities 1, 2 and 3 out of service forthwith until such time as [they] demonstrate[] full compliance with the terms of the preliminary injunction."  The order gave appellants ten days

---

[2]From this court's reading of this order, it appears to apply only to Munce.  See Aplts.' Appx. at 1555-59.  In a later order, however, the Superior Court stated that its contempt order applied to both MSPP and Munce, see id. at 1560-64, and this court accepts that statement (which the parties do not dispute) as accurate as to the scope of the contempt finding.

within which to comply, and warned them that failure to do so by that deadline would result in "a monetary fine in the amount of $1,000.00 per day for each day of continued noncompliance." It also awarded DES "its reasonable attorney's fees and costs required to pursue this matter."

Nonetheless, appellants did not bring their facilities into compliance with the preliminary injunction or New Hampshire law, nor did they take the tanks at those facilities out of service. Instead, they attempted to sell the facilities, along with other assets related to MSPP's fuel distribution and convenience store businesses, while continuing to operate them. On February 3, 2012, Facility 3 was sold to a third party, CMRK, Inc.

Aggrieved that appellants had not complied with either the preliminary injunction or the Superior Court's order of September 19, 2011, DES moved the Superior Court for an assessment of penalties against appellants. The Superior Court held a hearing on DES's motion on April 10, 2012, at which DES and appellants appeared and made offers of proof. Following the hearing, the Superior Court found that appellants had not complied with its previous orders or state environmental regulations. It therefore "assesse[d] monetary penalties of $1,000 a day commencing October 4, 2011 [ten business days after the contempt order] through

April 12, 2012," for a total of $192,000.  It also awarded DES attorney's fees and costs in the amount of $2,219.70.

Appellants did not appeal the Superior Court's order assessing penalties against them, and DES promptly filed an application in the Bankruptcy Court seeking an order allowing an administrative expense claim in the amount of $194,219.70, see 11 U.S.C. § 503(b)(1)(A), to which appellants objected.  After hearing argument, the court made a preliminary ruling from the bench, indicating that it would grant DES's application because the Superior Court awarded penalties for "a post-petition violation of a post-petition order."  That oral ruling was followed shortly thereafter by a written order granting the application.  This appeal followed.

### III.  **Analysis**

Section 503 of Chapter 11 of the Bankruptcy Code provides that certain administrative expenses "shall be allowed" after notice and a hearing.  11 U.S.C. § 503(b).  Among these are "the actual, necessary costs and expenses of preserving the estate."  Id. § 503(b)(1)(A).  The Bankruptcy Court relied on this subsection of Section 503 in allowing DES's claim.  It did not err in doing so.

"As a general rule, a request for priority payment of an administrative expense pursuant to [Section 503] may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." Cumberland Farms, 116 F.3d at 21 (quoting In re Hemingway Transport, Inc., 954 F.2d 1, 4-5 (1st Cir. 1992)).  This rule, however, does not govern all cases.  The Court of Appeals has

> recognized a special category of expense entitled to
> administrative priority status, based on considerations
> of fundamental fairness, consisting of amounts due
> entities injured by the debtor-in-possession's
> operation of the business even though their claims did
> not arise from transactions that were necessary to
> preserve or rehabilitate the estate.

Id. (quoting Hemingway Transport, 954 F.2d at 4-5) (internal citations omitted).  It is this "special category" upon which DES relied in seeking allowance of an administrative expense before the Bankruptcy Court, and upon which DES now relies on appeal.

While the briefing submitted in this case is extensive and might, based solely upon its length, seem to warrant an equally extensive analysis, that appearance is misleading.  As discussed at the outset, this case is governed by the Court of Appeals' opinions in Charlesbank Laundry and Cumberland Farms, both of

8

which dealt with the "special category of expense" DES claims here.

The question in Charlesbank Laundry was quite similar to that presented here:  "whether a civil compensatory fine for violation of an injunction by a debtor corporation engaged in a Chapter 11 reorganization qualifies for first priority treatment as an administrative expense under 11 U.S.C. § 503(b)(1)(a) as 'actual, necessary costs and expenses of preserving the estate.'" 755 F.2d at 201.  In that case, a number of private citizens had filed state-court actions seeking to enjoin a laundry "from committing a private and public nuisance and from violating a [local] zoning ordinance," and obtained preliminary injunctive relief to that effect.  Id.  After the laundry failed to comply with the injunction, the plaintiffs sought further relief from the state court, but before the court acted, the laundry filed a Chapter 11 petition.  After the Bankruptcy Court vacated the automatic stay to allow the state actions to proceed, the state court awarded the plaintiffs "a compensatory fine assessed civilly for violation of the temporary injunction herein of $16,283.85 being $4,752.95 due for legal services and disbursements prior to December 11, 1980 (the date [the laundry] filed its petition for reorganization) and the balance of $11,530.90 for services and disbursements after that date."  Id.

9

The plaintiffs then sought allowance of the postpetition part of the fine, $11,530.90, as a priority claim.  The Bankruptcy Court denied that motion, but on appeal, the Court of Appeals reversed.  In so doing, the court relied on the Supreme Court's opinion in Reading Co. v. Brown, 391 U.S. 471, 482 (1968), which held that "tort claims arising during an arrangement are actual and necessary expenses of the arrangement," because it seems "more natural and just" to allow those injured by operation of a business during arrangement to "recover ahead of . . . those for whose benefit the business is carried on."  The Court of Appeals reasoned that "[t]he same fairness principle" favored the plaintiffs, "whose premises, lives, or businesses were adversely affected by [the laundry's] continuing conduct in violation of the temporary injunction." Charlesbank Laundry, 755 F.2d at 202.  It noted, in fact, that the case before it was "an even stronger one for priority than was Reading," which involved a negligence action, because the debtor had "deliberately continued a violation of law month after month presumably because it was more lucrative for the business to operate outside the zoning ordinance than within it."  Id. at 203 (emphasis in original).  It continued:  "If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, a fortiori, an intentional act

10

which violates the law and damages others should be so treated."
Id.

As DES notes, the facts in Charlesbank Laundry closely parallel those of the present case: here, as there, the debtor estate violated both a state law and a prepetition preliminary injunction, the violations began prepetition and continued postpetition, and a state court awarded monetary sanctions as a result of the postpetition violations. It might be argued that Charlesbank Laundry's rationale is limited to damages awarded the victims of the debtor estate's postpetition torts, and therefore does not support prioritizing fines for the debtor's failure to comply with state environmental laws (indeed, appellants suggested as much in their brief before the Bankruptcy Court). The Charlesbank Laundry court itself observed, however, that Reading had "some resilience . . . even beyond the field of torts," id., and in Cumberland Farms, the Court of Appeals picked up where Charlesbank Laundry left off.

Not unlike appellants, the eponymous debtor in Cumberland Farms operated a chain of convenience stores and gas stations across the state of Florida; each of these facilities had at least one underground petroleum storage tank. 116 F.3d at 18. State environmental laws imposed financial reporting requirements on the owners of such tanks, and further provided for a civil

penalty of up to $10,000 per day for each violation of these requirements.  Id.  The debtor failed to comply with those requirements for an 18-month period commencing in February 1992–-a period interrupted in May 1992 by the debtor's filing of a Chapter 11 petition.  Id.  The state Department of Environmental Protection applied for, and the Bankruptcy Court awarded, an administrative expense in the amount of $200,000, representing a penalty for the postpetition violations.  Id.  On appeal, the Court of Appeals, relying on Reading and Charlesbank Laundry, affirmed.  The court noted that "[t]he payment of a fine for failing, during bankruptcy, to meet the requirements of Florida environmental protection laws is a cost ordinarily incident to operation of a business in light of today's extensive environmental regulations," and that "it would be fundamentally unfair to allow Cumberland Farms to flout Florida's environmental protection laws and escape paying a penalty for such behavior." Id. at 20-21.

  The path of this case is therefore well-trodden.  Following Charlesbank Laundry and Cumberland Farms, fines and penalties for a Chapter 11 debtor-in-possession's postpetition violation of state court orders and environmental laws are properly accorded administrative priority under 11 U.S.C. § 503(b)(1)(A)–-even if (as here) those violations began prepetition.  Appellants wisely

12

do not disagree with this conclusion.  See Reply Br. (document no. 17) at 8.

Instead, in an attempt to escape this conclusion, appellants recast the conduct for which the state court imposed sanctions as a "failure to remedy an alleged prepetition violation of state environmental law."[3]  Aplts.' Br. (document no. 13) at 3; see also id. at 35 ("The state law claim here [arises from] a 'passive' failure of the Appellants to correct a condition that existed prepetition.").  Citing ample authority, they argue that the costs of remediating prepetition environmental violations cannot be given administrative priority (at least in the absence of "an imminent and actual threat to public health and safety," which, they say, is not supported by the record–-an issue the court need not reach).  Aplts.' Br. (document no. 13) at 26-28; cf., e.g., In re N.P. Mining Co., 963 F.2d 1449, 1458-59 (11th

---

[3]Appellants also argue that the fines they incurred as a result of their postpetition violations of the injunction and New Hampshire law cannot be given administrative priority status because they were "not operating [their] business post-petition, but . . . merely maintaining the status quo pending abandonment or sale."  Aplts.' Br. (document no. 13) at 30 (emphasis in original); see also id. at 38 ("Unlike the Appellants, the debtor in Cumberland Farms did not have any intent to sell assets and was operating its business at full capacity.").  That theory was not argued in appellants' brief before the Bankruptcy Court, and this court will not consider it now.  See In re LaRoche, 969 F.2d 1299, 1305 (1st Cir. 1992) (appellate tribunal will not consider arguments not raised before the Bankruptcy Court).

Cir. 1992) ("[W]e exclude from consideration as an administrative expense any penalty assessed postpetition for the failure of the debtor in possession or the trustee to abate a prepetition violation of the statute."); In re Lazar, 207 B.R. 668, 670 (C.D. Cal. 1997) ("[W]here the fines and penalties arise solely from the postpetition failure to remediate prepetition contamination, the fines and penalties do not qualify for administrative expense priority in any respect."). This was also the gravamen of their argument before the Bankruptcy Court, where they asserted that "the NH DES's claim is based on a pre-petition failure to remove underground storage tanks as required by New Hampshire environmental law." Aplts.' Appx. at 1569; see also id. at 1571 ("The basis of the penalties assessed against the Debtors in this case is the mere failure to remove the tanks . . . .").

The court cannot credit appellants' attempt to rewrite history by characterizing their contumacious conduct as a failure to remediate wholly prepetition violations. Contrary to appellants' arguments before both this court and the Bankruptcy Court, the injunction that they violated did not require them to "remove underground storage tanks."[4] Rather, that order required

---

[4] In fact, the injunction did not require appellants to take any action with respect to underground storage tanks. Rather, it applied to appellants' above-ground storage tanks. See Aplts.' Appx. at 562-64. That, however, is ultimately beside the point.

14

them to bring their fuel storage tanks and associated piping into compliance with New Hampshire law by constructing the spill protection required by New Hampshire law, see N.H. Code. R. Env-Wm 1402.21-.22, and having a professional engineer certify those upgrades, see id. 1402.35, or, alternatively, to take those tanks out of service (not remove them), see id. 1402.12.

Appellants elected to do neither of those things, instead keeping their tanks in service and out of compliance with New Hampshire law, and, indeed, installing new tanks that were also not in compliance with state law or the injunction, as the Superior Court specifically found. See Aplts.' Appx. at 1560-64. While doing these things, they were affirmatively operating their facilities in violation of state environmental law, not simply passively failing to correct a previous violation. See id. at 1563-64 ("[Appellants'] responsibility is to comply with the State regulations with respect to the operation of [their] business. The Court finds, after review of the pleadings and offers of proof, that the respondents are not in compliance with the State regulations."). As the Court of Appeals explained in In re Boston Regional Medical Center, Inc., 291 F.3d 111, 126 (1st Cir. 2002)--which appellants' counsel contended at oral argument was the "controlling authority" from this Circuit on

15

administrative expense priority[5]--the Charlesbank Laundry and Cumberland Farms line of cases "attempted to avoid a situation in which a bankruptcy estate may engage in activities regulated by state law while avoiding the costs associated with that regulation."  That is precisely the situation appellants urge on the court here.  Just as in Charlesbank Laundry, appellants "deliberately continued a violation of law month after month presumably because it was more lucrative for the business to operate outside the [law] than within it."  755 F.2d at 203 (emphasis omitted).  It was their deliberate continuation of their violation after filing for bankruptcy that the Superior Court penalized, and those penalties are entitled to priority under § 503(b)(1)(A).

Appellants also argue that the Bankruptcy Court erred by relying on the Superior Court's orders without holding an independent evidentiary hearing to examine whether their violations of state law occurred postpetition.  By doing so, appellants contend, the Bankruptcy Court in essence delegated to the Superior Court its task of determining the priority of DES's

---

[5]This contention came as somewhat of a surprise to the court, given the relative infrequency with which Boston Regional was cited in appellants' briefs.

claim under the Bankruptcy Code.  This argument also does not warrant reversing the Bankruptcy Court's determination.

As an initial matter, this court, when sitting as an appellate tribunal, will not consider arguments not presented to the Bankruptcy Court, In re LaRoche, 969 F.2d at 1305, and appellants did not argue in their brief to the Bankruptcy Court that the Superior Court's findings were insufficient to meet DES's burden or proving its claim, or that the Bankruptcy Court should hold its own evidentiary hearing.[6]  Instead, their sole argument, as already mentioned, was that the Superior Court assessed sanctions for their failure to remediate prepetition violations of New Hampshire law--an argument that, as just discussed, was premised upon a misstatement of the Superior Court's order.  Appellants did, in passing, assert at the hearing on DES's application to allow its claim that an evidentiary hearing might be warranted.  See Aplts.' Appx. at 1637:4-:6 ("[I]f the State wants to come prove post-petition harm, they've got to prove it.  We'd have to have an evidentiary hearing.").

---

[6]Appellants claim otherwise, asserting that their brief "argued the DES Application should be denied unless [DES] produced evidence of a post-petition violation and an imminent and identifiable harm."  Reply Br. (document no. 17) at 5-6.  That is incorrect.  Neither the word "evidence" nor the assertion that the Superior Court's order could not serve as competent proof of appellants' post-petition violations appears anywhere in that brief.  See generally Aplts.' Appx. at 1568-72.

This passing reference, however, was not sufficient to preserve this issue for appeal.  "[A] party has a duty to incorporate all relevant arguments in the papers that directly address a pending motion," and failure to do so waives any arguments not so raised. Rocafort v. IBM Corp., 334 F.3d 115, 121-22 (1st Cir. 2003) (internal quotation marks omitted); cf. United States v. Gertner, 65 F.3d 963, 969-70 (1st Cir. 1995) ("[W]e regularly turn a deaf ear to protests that an evidentiary hearing should have been convened but was not, where, as here, the protestor did not seasonably request such a hearing in the lower court.").

Appellants' argument is unpersuasive in any event.  By taking notice of the Superior Court's order and attendant factual findings, the Bankruptcy Court was not delegating the task of determining priority under the Bankruptcy Code to the Superior Court.  It reserved the ultimate determination of priority to itself, applying the controlling precedents in this Circuit.  It may have deferred to the Superior Court's findings of when and what violations occurred, but that was not improper (nor was it different in kind from the approach in Charlesbank Laundry).  Those findings were made in a prior judicial proceeding involving the selfsame parties before the Bankruptcy Court.  "The ordinary rules of collateral estoppel and res judicata apply in most actions in the bankruptcy court," In re Spigel, 260 F.3d 27, 33

(1st Cir. 2001), and the Superior Court's contempt orders amount to "final judgment[s] on the merits" for those purposes, Dillon v. Select Portfolio Servicing, Inc., 2009 DNH 012, 20 n.13. Indeed, the Court of Appeals has specifically cautioned against "relitigating state enforcement actions," remarking that "[t]he game is not worth the candle." In re Spookyworld, Inc., 346 F.3d 1, 10 (1st Cir. 2003).  So too here.

**IV. Conclusion**

For the reasons set forth above, the order of the Bankruptcy Court is AFFIRMED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 25, 2013

cc:   Jennifer Rood, Esq.
      Jessica A. Lewis, Esq.
      Robert J. Keach, Esq.
      Daniel W. Sklar, Esq.
      Holly J. Kilibarda, Esq.
      Peter C.L. Roth, Esq.
      Geraldine L. Karonis, Esq.